## Lever Estate

*Henry Stuckert Miller, W. Joseph Harrison, Jr.,* and *W. Joseph Harrison, 3rd,* for petitioners.

*J. William Ditter, Jr.,* and *Walter T. Darmopray,* for widow.

TAXIS, P. J., June 2, 1960.—This matter comes before the court upon the petition of Freda A. Lever and

Frankford Trust Company, executors under the will of Cyril Lever, Sr., asking that the adjudication of this court confirmed on January 19, 1959, be set aside in circumstances hereinafter related. The matter was made returnable on May 17, 1960, at which time a full hearing was held after notice to all parties interested.

On April 30, 1955, Cyril Lever, Sr., decedent, and Freda A. Lever, his intended wife, executed what purported to be an ante-nuptial agreement. The parties were married on June 18, 1955; it was the second marriage for each. Cyril Lever, Sr., died testate on October 30, 1957, leaving his wife, and children by his first marriage. His will dated June 14, 1955, inter alia, created a trust of one-third of his estate for his widow, she to have income, but limited to a maximum of $5,000, all excess income and corpus to descend upon her death to his children or their issue. His gross estate exceeded $400,000.

Subsequently, the widow elected to take against the will and filed her election on October 28, 1958.

This court in an adjudication confirmed January 19, 1959, acknowledged as valid the election to take against the will and thereby awarded one-third of said balance to Freda A. Lever outright, and awarded 503 Rodman Avenue, Jenkintown, to Alice Ann Doxrud and Cyril Lever, Jr. The balance of said estate was awarded to Freda A. Lever and Frankford Trust Company, testamentary trustees, in accordance with the directions of the will.

At the time the ante-nuptial agreement was not called to the attention of the court, but subsequent to the adjudication, the estate tax division of the Internal Revenue Department of the United States Treasury questioned the validity of the widow's election to take against the will in light of this ante-nuptial agreement on April 30, 1955.

The issue before the court, therefore, requires a determination of the validity or invalidity of this ante-nuptial agreement. If this ante-nuptial agreement is valid and binding, the widow's election to take against the will must be stricken off and the adjudication of this court must be amended. On the contrary, if the ante-nuptial agreement is invalid then the adjudication and the awards made thereunder would be affirmed as heretofore made.

It is a cardinal rule of law in passing upon the validity of ante-nuptial agreements that a reasonable provision must be made for the widow or, in the absence of such provision, a full and fair disclosure of the husband's worth: McClellan Estate, 365 Pa. 401. Cf. Snyder Estate, 375 Pa. 186; Fiduciary Review, January 1954.

Mrs. Freda Ayres Lever was called as on cross-examination by the estate, thus rendering her competent to testify, and she briefly testified that she was utterly shocked to learn of the large estate left by her husband after his death, that such net worth was never disclosed or discussed with her at the time the ante-nuptial agreement was made or at any time thereafter.

In this respect, Mrs. Lever was fully corroborated by her stepson, Cyril Lever, Jr., who appeared and testified that he was astounded when he learned of his father's worth.

The testimony establishes that under the ante-nuptial agreement, the allowance to Mrs. Lever amounts to approximately $3,000 per year, and under the testamentary trust she has no power to invade the corpus of the trust for additional funds. The testimony abundantly establishes the fact that Mrs. Lever's station in life prior to her husband's death and even prior to the marriage required a larger sum than $3,000 per year; that it is impossible for her to main-

tain herself and that she had to seek employment in order to obtain sufficient funds.

After consideration of all the evidence, I find as a fact and rule that the ante-nuptial agreement was void and invalid for the reason that it failed to make a reasonable allowance for the widow and for the additional reason that a full and fair disclosure of decedent's net worth was never made to this widow at the time of the execution, or at any time thereafter.

And now, June 2, 1960, the adjudication of this court confirmed nisi on January 19, 1959, is reinstated and reaffirmed and the awards therein made are directed to be distributed by the executors consonant with the views expressed in that adjudication.